UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 4:22-cv-74

| STEPHANIE BAUMHOVER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | **(JURY TRIAL DEMANDED)** |
| MINNESOTA LIFE INSURANCE | ) | |
| COMPANY; SECURIAN LIFE INSURANCE | ) | |
| COMPANY; APPLE, INC.; APPLE GROUP | ) | |
| LIFE INSURANCE PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

**NOW COMES** Plaintiff, Stephanie Baumhover, by and through counsel, states as her Complaint the following:

### PARTIES

1. Plaintiff Stephanie Baumhover ("Plaintiff" or "Ms. Baumhover") is a resident of Apex, Wake County, North Carolina.

2. Upon information and belief, Defendant Minnesota Life Insurance Company ("Minnesota Life") is a Minnesota corporation with a principal office and place of business in St. Paul, Minnesota. Upon information and belief, at all times relevant to this Complaint, Minnesota Life was duly authorized to transact, and was transacting, business in the State of North Carolina.

3. Upon information and belief, Defendant Securian Life Insurance Company ("Securian") is a Minnesota corporation with a principal office and place of business in St. Paul, Minnesota. Upon information and belief, at all times relevant to this Complaint, Securian was duly authorized to transact, and was transacting, business in the State of North Carolina.

4. Upon information and belief, Minnesota Life and Securian transact business in the State of North Carolina under the name of "Minnesota Life Insurance Company, A Securian Financial Company." With respect to Plaintiff's claims as detailed herein, Minnesota Life and Securian have operated in a combined and concerted manner, including, but not limited to, aspects of underwriting, policy issuance, financial arrangements, corporate structure and affiliation, claims adjustment, and payment of claims, such that their responsibilities and legal obligations are joint, mutual, and co-extensive. Minnesota Life and Securian have disregarded corporate formalities in a deceptive way, to the detriment of Plaintiff such that they should be treated together as a single actor. Therefore, Defendants Minnesota Life and Securian will be referred from this point forward collectively as Defendant "Minnesota Life, A Securian Financial Company."

5. Upon information and belief, Defendant Apple, Inc. ("Apple") is a corporation organized and existing under the laws of the State of California, with a principal place of business in Cupertino, California. Upon information and belief, Apple was doing substantial business in the State of North Carolina at all times alleged herein.

6. Upon information and belief, Apple entered into a contract with Minnesota Life, A Securian Financial Company to provide group life insurance benefits to Apple employees in the State of North Carolina.

7. Upon information and belief, Apple created the Defendant Apple Group Life Insurance Plan (the "Plan") in conjunction with Minnesota Life, A Securian Financial Company. The Plan is an employee benefit plan governed by ERISA pursuant to 29 U.S.C. §§ 1002(3), 1003(a) and 1132(d). At all times pertinent to this action, upon information and belief, Apple and Minnesota Life, A Securian Financial Company sponsored and maintained the Plan. Apple, in conjunction with Minnesota Life, A Securian Financial Company, helps to administer the Plan

under ERISA because Apple is named as the plan administrator and policyholder in the Plan, or, alternatively, it is the employer sponsoring the Plan and therefore is the default plan administrator under 29 U.S.C. §§ 1002(16).

8. The Plan provides group life insurance benefits to employees of Apple, which was assigned group policy number 34017-G. A true and correct copy of the Group Term Life Certificate of Insurance issued by the Plan is attached hereto as **Exhibit A**.

9. Upon information and belief, Apple and Minnesota Life, A Securian Financial Company, at all times relevant to this Complaint, operated in a combined and concerted manner, including, but not limited to, aspects of underwriting, policy issuance, financial arrangements, corporate structure and affiliation, claims adjustment, and payment of claims, such that their responsibilities and legal obligations are joint, mutual, and co-extensive.

10. Defendants Apple and Minnesota Life, A Securian Financial Company shall hereinafter collectively be referred to as "Defendants."

11. Defendants issued group term life insurance benefits made payable to Mark Nelson ("Mr. Nelson") and/or his beneficiaries, a former Apple employee. Mr. Nelson unexpectedly passed away on March 26, 2021, at his residence in Apex, Wake County, North Carolina. Ms. Baumhover, Mr. Nelson's former spouse, is listed as the primary, one-hundred percent, beneficiary of the benefits owed under the Plan. A true and correct copy of the beneficiary designation page is attached hereto as **Exhibit B**.

## JURISDICTION AND VENUE

12. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*.

13.     This is an action for life insurance benefits and enforcement of ERISA rights pursuant to 29 U.S.C. § 1132. Specifically, Plaintiff brings this action to secure benefits under 29 U.S.C. § 1132; on account of breaches of fiduciary duty under 29 U.S.C. § 1109, through 29 U.S.C. § 1132; and for other equitable relief under 29 U.S.C. § 1132.

14.     Plaintiff is entitled to bring this action as a Beneficiary within the meaning of 29 U.S.C. § 1002(8).

15.     This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties pursuant to 29 U.S.C. § 1132(a), (e)(1) and (f) and 28 U.S.C. § 1331. The Court should exercise its powers of supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because it is so related to Plaintiff's claims over which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the United State Constitution.

16.     Venue is proper in the Eastern District of North Carolina pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) by virtue of the participant's employment in this District, the administration of the Plan in this District, the denial of benefits in this District, and Defendants doing business and being found in this District.

## FACTUAL ALLEGATIONS

17.     Reiterated from above, the Plan is a group life insurance plan providing life insurance to employees of Apple, which was assigned group policy number 34017-G.

18.     As shown at **Exhibit A**, the Plan had an effective date of January 1, 2014 and was revised on February 5, 2021.

19.     Upon information and belief, Apple and Minnesota Life, A Securian Financial Company, sponsored and maintained the Plan.

20. Upon information and belief, Apple and Minnesota Life, A Securian Financial Company process claims for the Plan, and are charged with making eligibility and benefits determinations under the Plan.

21. Defendants have authority to determine eligibility for benefits. Defendants are "fiduciaries" of the Plan, as that term is defined in 29 U.S.C. § 1002.

22. Defendants are fiduciaries of the Plan under ERISA because:

   a. they had discretionary authority and responsibility to administer the Plan, including authority and responsibility to make eligibility determinations with respect to which employees were allowed to participate in the Plan;

   b. they exercised authority and control regarding management and disposition of the Plan assets;

   c. they exercised authority and control regarding management and disposition of the Plan assets in the form of the life insurance policy issued to the Plan;

   d. they made benefits determinations with respect to Plaintiff under the Plan; and

   e. they otherwise performed fiduciary duties with respect to the Plan.

23. Defendants had a fiduciary obligation to Plaintiff to make benefits determinations under the Plan fairly, and to determine eligibility benefits according to the terms of the Plan.

24. Defendants had a fiduciary duty to handle Plan assets, which included the life insurance policy, in a prudent manner and to use such assets solely for the administration of the Plan and to pay benefits under the Plan.

25. Mr. Nelson was a participant in the Plan as a result of his employment with Apple.

26. Mr. Nelson's employment with Apple ended on February 23, 2021.

27. Mr. Nelson's termination letter from Apple indicated to him that some of his benefits may extend past his termination date ("Termination Letter"). A true and correct copy of the Termination Letter is attached as **Exhibit C** and incorporated herein by reference.

28. On or about March 5, 2021, a letter was sent to Mr. Nelson which indicated that the benefits owed to him under the Plan as part of his employment with Apple were to remain in full force and effect, payable up and until 31 days from the date of his termination, or, up and until March 26, 2021. A true and correct copy of the March 5, 2021 letter is attached as **Exhibit D** and incorporated herein by reference.

29. The March 5, 2021 letter further indicated that Mr. Nelson's terminating coverage amount eligible for portability and/or conversion for Employee Life was $493,000.00.

30. The Conversion Right section of the Plan states that "[i]f an insured dies within 31 days from the date the group coverage ends, but prior to converting to an individual life plan, a benefit is payable." (See Ex. A, p. D).

31. Moreover, the Portability Application section of the Plan states that "[i]f an insured dies within the first 31 days of the election period, a death benefit is payable under the conversion right benefit." (See Ex. A, p. D).

32. Thirty-one (31) days from Mr. Nelson's termination date of February 23, 2021 was March 26, 2021.

33. Mr. Nelson passed away on day thirty-one (31), making the Benefits under the Plan immediately due and payable.

34. Mr. Nelson and Plaintiff shared custody of their three (3) children, who are the contingent beneficiaries of the Plan.

35. On March 26, 2021, the children were in the custody of Plaintiff, but their teenage son, a minor child, went to Mr. Nelson's house early that afternoon with a friend to work out in the gym set up in the garage. The minor child will be referred to throughout only as "R.N."

36. On March 26, 2021, R.N. and his friend entered Mr. Nelson's residence and found him asleep on the sofa.

37. Mr. Nelson awoke upon their entry into the home but seemed lethargic.

38. As they were leaving, R.W. and his friend stopped to tell Mr. Nelson goodbye. At that time, Mr. Nelson was hunched over the table where he was later found deceased in front of his computer.

39. R.N. exchanged a few sentences with his father but observed that Mr. Nelson had his hands folded on positioned on his head and seemed "out of it."

40. After R.N. and his friend left, Mr. Nelson was home alone, but exchanged a few text messages. Mr. Nelson's last text messages were sent on March 26, 2021.

41. Mr. Nelson's children tried to get in touch with their father on March 27, 2021, but never received a response.

42. Again, on March 28, 2021, Mr. Nelson's children were not able to reach him.

43. On March 28, 2021, R.N. decided to go to Mr. Nelson's house to work out again and to check on his father. R.N. found Mr. Nelson deceased upon arrival, lying on the ground beside the table and computer where he left his father on March 26, 2021. Mr. Nelson's phone was found in his front left pocket.

44. From his positioning, and bodily fluids found around his body, it was apparent that Mr. Nelson fell out of his chair onto the ground and immediately expired.

45. Mr. Nelson's son called 911, and officers from the Apex Police Department responded to the scene.

46. Upon information and belief, the Apex Police Department was the primary law enforcement agency assigned to respond to the call and received assistance from the City-County Bureau of Identification. A true and correct copy of the complete investigative file from the agencies is attached as **Exhibit E** and incorporated herein by reference

47. Upon information and belief, several officers were present and responded to the Mr. Nelson's home on March 28, 2021, including officers A.R. Dias, L.P. Warneke, S.P. Michaels, D.P. Swope, B.C. Watts, and K.D. Barrow.

48. Upon information and belief, Officer Dias was the first to arrive on the scene, and resuscitation efforts were not necessary, as it was clear from the position and appearance of the body that Mr. Nelson had been deceased for some time.

49. Upon information and belief, Detective Warneke, the second Apex Police Officer on the scene, observed dried blood, vomit, and feces on the floor where Mr. Nelson was found, which confirmed that he was deceased on March 26, 2021 before first responders arrived at Mr. Nelson's home.

50. After Mr. Nelson's son informed Plaintiff of what happened, she immediately went to Mr. Nelson's house.

51. Apex Police would not allow Plaintiff to enter the residence but asked her to lock the door when they left.

52. As Plaintiff was locking the door to the house, Mr. Nelson's dried bodily fluids in the area where he passed were visible through a front window.

53. Plaintiff asked her parents, Lorin and Lorraine Baumhover ("Dr. and Mrs. Baumhover") to come to Apex to help her assess Mr. Nelson's residence.

54. At or around noon on March 29, 2021, Dr. and Mrs. Baumhover arrived in Apex and went to Mr. Nelson's house to take care of some things that were too difficult for Plaintiff and her children to endure following the shocking death of their father.

55. Dr. and Mrs. Baumhover were the first ones to gain access to the home since Mr. Nelson's body was removed on March 28, 2021.

56. When Dr. and Mrs. Baumhover arrived, all of the lights were still on inside of Mr. Nelson's house.

57. Upon entering Mr. Nelson's home, Dr. and Mrs. Baumhover immediately noticed an awful odor. True and correct copies of the Affidavits of Dr. and Mrs. Baumhover are attached as **Exhibits F** and **G** and incorporated herein by reference.

58. As indicated in their Affidavits, Dr. and Mrs. Baumhover, knew it was clear that Mr. Nelson passed away in the dining room in front of his Apple computer. (Ex. F, ¶ 7; Ex. G, ¶ 7).

59. That same day, on March 29, 2021, Dr. Craig Nelson ("Dr. Nelson"), an Associate Chief Medical Examiner at the North Carolina Office of the Chief Medical Examiner, conducted a medical examination of Mr. Nelson's remains. A true and correct copy of Dr. Nelson's Report of Investigation by Medical Examiner is attached as **Exhibit H** and incorporated herein by reference. A true and correct copy of the Affidavit of Dr. Nelson is attached as **Exhibit I** and incorporated herein by reference.

60. Dr. Nelson has no familial connection to Mr. Nelson or to Plaintiff.

61. In his examination, Dr. Nelson determined that the autopsy documented a well-developed man with marked jaundice consistent with chronic alcoholism, and the death appeared sudden. (Ex. H, p. 4; Ex. I, ¶ 6).

62. Dr. Nelson was also informed that while Mr. Nelson was found deceased on March 28, 2021, but he was last known to be alive during the afternoon of March 26, 2021. (Ex. H, p. 1; Ex. I, ¶¶ 5-6).

63. Notably, Dr. Nelson indicated that "the postmortem findings are consistent with his death having occurred on the date that Mr. Nelson was last known to be alive." (Ex. I, ¶ 7). Mr. Nelson was last known to be alive on March 26, 2021.

64. Ellington Digital Forensics is a company that specializes in digital forensics, fraud investigations, e-discovery, and litigation support. A true and correct copy of the curriculum vitae of Derek Ellington is attached as **Exhibit J** and incorporated herein by reference.

65. Ellington Digital Forensics accessed and assessed any activity on Mr. Nelson's Apple MacBook laptop, Apple iPhone, and Apple iPad. A true and correct copy of a letter from Derek Ellington regarding the electronic data review of Mr. Nelson's devices is attached as **Exhibit K** and incorporated herein by reference.

66. Derek Ellington found that there was no activity attributable to Mr. Nelson on any of his devices after 7:48 p.m. on March 26, 2021.

67. Mr. Nelson's last known activity was a text message he sent to his daughter at 7:48 p.m. on March 26, 2021.

68. After that time, there were multiple incoming messages with no outgoing messages or responses by Mr. Nelson.

69. The Apple Health Monitor on iPhones tracks the device's linear and vertical movements when movement is consistent with walking, running, or going up and down stairs. It caches the data in real time and then updates the activity log every hour. When there is no activity, the monitor will record a null data update for that time period.

70. The Apple Health activity and movement log for Mr. Nelson's iPhone was capturing movement data on March 26, 2021, with the last recorded movement being the period of 4:00 p.m. and 5:00 p.m.

71. After 5:00 p.m. on March 26, 2021, the Apple Health logged null movement until April 1, 2021, when the movement commenced during the period 10:00 a.m. to 11:00 a.m., which was after Mr. Nelson had passed away.

72. When his body was discovered, Mr. Nelson's iPhone was found in his front left pants pocket. (Ex. E)

73. No phone calls or text messages for help were sent from Mr. Nelson's iPhone on or after March 26, 2021.

74. Based on Derek Ellington's review of the electronic data, he concluded that the last activity and movement attributable to Mr. Nelson was at 7:48 p.m. on March 26, 2021, and there was no further activity or movement after that time.

75. Mr. Nelson's Death Certificate, which is attached as **Exhibit L** and incorporated herein by reference, states "Found March 28, 2021" for the date of death.

76. Mr. Nelson passed away on March 26, 2021, when the Plan was still in full force and effect.

77. Following Mr. Nelson's death, Plaintiff submitted a claim to Defendants under the Plan, which was assigned Claim Number 1553949 (the "Claim").

78. Defendants denied the Claim in a letter dated May 18, 2021, which is attached as **Exhibit M** and incorporated herein by reference.

79. On or about December 14, 2021, Plaintiff, through counsel, sent a letter of appeal to Minnesota Life, A Securian Financial Company appealing the denial of the Claim ("Letter of Appeal").

80. On or about December 23, 2021, Plaintiff's counsel received acknowledgement from Minnesota Life, A Securian Financial Company of the letter of appeal.

81. On or about January 11, 2021, Minnesota Life, A Securian Financial Company sent a letter to Plaintiff's counsel indicating that under ERISA, it was permitted sixty (60) days from receipt of the Letter of Appeal to conduct their review.

82. On or about January 18, 2021, Minnesota Life, A Securian Financial Company sent a letter to Plaintiff's counsel requesting additional documentation, including the complete police report and medical examiner's report.

83. Thereafter, Plaintiff provided Minnesota Life, A Securian Financial Company with the requested additional documentation.

84. On or about April 18, 2022, Minnesota Life, A Securian Financial Company sent a letter to Plaintiff's counsel affirming its denial of the Claim because Mr. Nelson's death was outside the thirty-one (31) day period to convert his insurance after Apple terminated his employment. A true and correct copy of the April 18, 2022 letter from Minnesota Life is attached as **Exhibit N** and incorporated herein by reference.

85. The April 18, 2022 letter also included an ERISA Notice, which stated that the decision completed the mandatory administrative review procedures, and Plaintiff had the right to bring a lawsuit under Section 502(a) of ERISA.

86. Plaintiff has exhausted all mandatory administrative remedies under the Plan, and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## FIRST CLAIM FOR RELIEF: BREACH OF CONTRACT

87. Plaintiff realleges and incorporates herein by reference the preceding allegations of the Complaint as if fully set forth herein.

88. Defendants' promise to pay life insurance benefits to Plaintiff, as the beneficiary of the Plan, was a contract between Defendants and Plaintiff.

89. Defendants' failure to pay Plaintiff's valid Claim for life insurance benefits constitutes a breach of their obligations under the Plan.

90. Plaintiff is entitled to recover damages she incurred in an amount to be determined at trial as a result of Defendants' breach of contract.

## SECOND CLAIM FOR RELIEF: WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132

91. Plaintiff realleges and incorporates herein by reference the preceding allegations of the Complaint as if fully set forth herein.

92. Defendants owed Plaintiff, as a beneficiary of the Plan, a fiduciary duty to make eligibility and benefits determinations in a fair and consistent manner and solely in the interest of Plaintiff and other Plan participants and beneficiaries.

93. Defendants have wrongfully denied benefits to Plaintiff in violation of the Plan provisions and ERISA for the following reasons:

   a. Plaintiff has been wrongfully denied life insurance benefits;

   b. Defendants failed to accord proper weight to the evidence in the administrative record; and

c. Defendants have violated their contractual obligation to furnish life insurance benefits to Plaintiffs.

### THIRD CLAIM FOR RELIEF: BREACH OF FIDUCIARY DUTY UNDER 29 U.S.C. §§ 1104, 1109 AND 1132

94. Plaintiff realleges and incorporates herein by reference the preceding allegations of the Complaint as if fully set forth herein.

95. Defendants are fiduciaries as defined in 29 U.S.C. § 1002(21) because Defendants have discretionary authority and/or discretionary responsibility in the administration of the Plan.

96. Defendants acted as fiduciaries in that they exercised discretionary authority and control as to the management and disposition of Plan assets.

97. 29 U.S.C. § 1103 provides that an insurance policy is an asset of an ERISA plan. The life insurance policy issued to the Plan by Defendants is an asset of the Plan.

98. Defendants acted as fiduciaries in that they exercised discretionary authority and control as to the management and disposition of Plan assets because they denied the Claim and otherwise acted in an imprudent manner in their management and disposition of the Plan.

99. Defendants breached their fiduciary duties to Plaintiff and other beneficiaries and participants of the Plan by failing to use Plan assets for proper purposes under ERISA, including Plan administration and payment of benefits.

100. The Plan has been harmed because of Defendants' breach of fiduciary duties in that the Plan has not been administered in compliance with ERISA and other applicable law.

101. The Plan is entitled to relief requiring that Defendants:

    a. administer the Plan in compliance with ERISA and other applicable laws and regulations;

      b.      pay Plaintiff life insurance benefits under the Plan;

      c.      cease dealing with Plan assets for their own benefit;

      d.      be removed as fiduciaries and with respect to any other fiduciary responsibilities pursuant to the Plan, and to have a third-party fiduciary appointed to carry all such fiduciary functions; and

      e.      other appropriate relief, including declaratory, injunctive, and equitable relief.

102.    Defendants are jointly and severally liable for Plaintiff's damages.

## FOURTH CLAIM FOR RELIEF:
## ATTORNEYS' FEES UNDER 29 U.S.C. § 1132

103.    Plaintiff realleges and incorporates herein by reference the preceding allegations of the Complaint as if fully set forth herein.

104.    Plaintiff is entitled to her attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

105.    Defendants are jointly and severally liable for Plaintiff's attorneys' fees and costs.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff prays that the Court grant her the following relief:

1.    A trial by jury on all issues triable;

2.    Damages for breach of contract in an amount to be proven at trial;

3.    Grant Plaintiff declaratory and injunctive relief, finding that she is entitled to benefits under the terms of the Plan for life insurance benefits in the amount of $493,000.00, and that Defendants be ordered to pay Plaintiff life insurance benefits under the Plan;

4.    Declaratory and injunctive relief to the Plan against Defendants under 29 U.S.C. § 1132(a):

      a.      requiring them to administer the Plan in compliance with ERISA and other

applicable laws and regulations;

b. enjoining Defendants from denying Plaintiff life insurance benefits under the Plan;

c. requiring them to cease dealing with Plan assets for their own benefit;

d. removing them as fiduciaries and with respect to any other fiduciary responsibilities pursuant to the Plan, and to have a third-part fiduciary appointed to carry all such fiduciary functions; and

e. other appropriate declaratory, injunctive, and equitable relief.

5. An order pursuant to 29 U.S.C. § 1132(g) awarding Plaintiff all reasonable attorneys' fees and expenses incurred because of Defendants' wrongful denial in providing benefits and breaches of fiduciary duty;

6. The costs of this action;

7. Interest as provided by law, including but not limited to pre-judgment and post-judgement interest; and

8. An award for such other and further relief as may be just and proper.

This the 5th day of July, 2022.

Respectfully submitted,

**HOWARD, STALLINGS, FROM, ATKINS, ANGELL & DAVIS, P.A.**

/s/ Rebecca H. Ugolick
Rebecca H. Ugolick (NC Bar No.: 48126)
Brooke E. Webber (NC Bar No.: 56619)
Post Office Box 12347
Raleigh, North Carolina 27605
T: (919) 821-7700
F: (919) 821-7703
E: rugolick@hsfh.com; bwebber@hsfh.com
*Attorneys for Plaintiff*